Garvin, J.
In this case there was no abandonment; nor was there sufficient evidence to establish a legal transfer of the remnants of the cargo to the underwriters. What evidence there was to that effect was very slight, and abundantly refuted by other facts in the case. No such pretense was made by the defendants, and express notice to the contrary was given to them by the plaintiffs. It may be assumed that the underwriters had no title to the cotton saved, whoever else had. It had been expressly agreed that the sending of the .agent for the cotton, and bringing it to New York, should be without prejudice to the plaintiffs. There being no .abandonment before it arrived at the port of destination, the plaintiffs could not afterwards abandon it for damages. There is no pretense of any other way in which the plaintiffs could have parted with, or lost the title to, their property. It must therefore be assumed, that the consignees were the owners of all the cotton which came from the wreck of the brig. As between the different consignees, if there had been no insurance upon the cotton, and it had arrived in the precise condition in which the cargo was landed at this port, there could have been no question as to their interest in the unidentified part. Each consignee and owner would have been entitled to his proportion of the proceeds of a sale of it, had it taken place; and exclusive possession and refusal to deliver upon demand, or. the assertion of exclusive dominion, by one con *606 signee as against the other, would have been a good cause of action by the latter, against the former. In such an action by these plaintiffs it would have been no defense to have insisted upon inability to identify the property claimed. For at most not more than thirty bales were physically lost with the wreck ; so that at least ninety five bales of the plaintiffs’ cotton, among the identified cotton, must have been saved. The cotton itself was of a uniform quality. The plaintiffs,, therefore, not only had an interest in, but were the owners of, some portion of the cotton which arrived, which was undistinguishable from the rest. It is quite clear that a large portion of the cotton of the plaintiffs reached New York, although 125 bales could ,not be identified as the original • bales. It was in proof, as matter of fact, that all the cotton shipped was brought to New York, except about thirty bales. The mere facts of insurance and loss of marks and numbers upon the bales could not therefore affect the title to the property, as between the defendants and the assured, in the slightest degree. If the plaintiffs had, with the consent of all parties, taken possession of their aliquot portion of the cotton saved, although with marks and numbers erased, that would have taken the place of their cotton, for all purposes, including that of their ownership; he sacking, size and weight of bales of cotton being of course the same. But instead of. that course being adopted, a sale was made by the defendants, of the cotton in mass, requiring the rights of she parties now to be fixed by a distribution of the proceeds. It cannot be contended that there was either a physical destruction, or one in contemplation of law, of the cotton, any more than it can be assumed that no part of the cotton of the plaintiffs came, as such, to the port of destination. The only pretense for such a supposition is the fact that the marks and numbers upon a portion of the bales were destroyed. If this reasoning be sound, and loss of marks as a means of identification, destroys ownership, it would be equally so, although the plaintiffs had been the only consignees and the cotton had arrived at the port of destination with the same loss of marks. Loss *607 of identity is a peril insured against by the policy; otherwise the existence of the marks and numbers would form a part of the subject matter of insurance.
The accidental mingling of grain of the same quality, consigned to different owners, without damage, cannot be said to be a total loss at the port .of destination. How can the loss of identity by reason of a peril be a destruction, in any sense, of an article in specie ? And how can there be a total loss without abandonment, if the thing insured still exist in specie ? An insurance on goods is a contract to indemnify the insured only for any loss he may sustain by his goods being prevented by the perils of the seas from arriving in safety at their port of destination. (2 Arnould on Ins. § 1119.)
But it is said the plaintiffs must identity their cotton, or the damage to it cannot be determined.. In answer to this, it may be said, that we have already seen that, upon the proofs, a very large part of the 125 bales belonging to the plaintiffs, in fact arrived, and that the plaintiffs would have had the right to have taken their aliquot portion of the rest of the cotton. This would be equally true, if every bale, had been broken, and the cotton reduced to one confused mass, although no part of it had been actually physically lost. In other words, if the cotton had all been unbaled, and thrown into a confused mass, and so brought to the port of destination, each consignee would have had aright to take his aliquot part; being only accountable in case he invaded the quantity which belonged to the other consignees. (Kimberly v. Patchin, 19 N. Y. Rep. 330.) There is no difference between such a case and the one under consideration. Evidence of the amount of injury to the value can always be got at by averaging the different degrees of damage among the cotton, when it is of a uniform quality; and such damage may always he determined by a comparison of the proceeds of the sale with the sound values. Here loss of evidence, or difficulty of determination of the amount of damage, cannot alter rights. It may create difficulty for a jury to determine the facts, but cannot change the law.
The rule of adjustment adopted by the jury was, therefore, *608 correct. This was a case of partial and not of total loss, with salvage.
The exceptions taken by the defendants must be overruled, and the judgment affirmed, with costs.
Jones, J., concurred.